UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

NICHOLAS CORY PLUG,             Case No.
                                                        Hon.

          Plaintiff,

v.

VAN BUREN COUNTY, a corporate subunit of Government,
SHERIFF DANIEL ABBOTT, DEPUTY DILLON KELLY,
and NURSE ROSLYNN HICKMOTT,
in their individual and official capacities,

          Defendants.

---

THE MICHIGAN LAW FIRM
Racine M. Miller (P72612)
*Attorneys for Plaintiff*
135 N. Old Woodward Ave., Suite 270
Birmingham, MI 48009
Phone: 844.464.3476
Fax: 248.237.3690
racine@themichiganlawfirm.com

---

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

NOW COMES the Plaintiff, Nicolas Cory Plug, by and through counsel, The Michigan Law Firm, PC, by Racine M. Miller, and in support of his Complaint for damages and Demand for Jury states as follows:

### JURISDICTION, VENUE, AND PARTIES

1. This is an action seeking to redress the wrongs committed in violation of the constitutional rights of Nicholas Cory Plug (hereinafter "Plaintiff" or "Plug"), by Van Buren County, the Van Buren County Sheriff, and personnel

employed at the Van Buren County Jail, pursuant to 42 U.S.C. § 1983. The said officers, acting at all relevant times under the color of state law, demonstrated deliberate indifference to the serious medical needs of Plaintiff, in violation of his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. The actions taken against Plaintiff resulted in severe, debilitating, and permanent physical and emotional injury and ischemic stroke, requiring him to be placed under medical supervision and to receive in-patient medical treatment, and also causing significant damages including, but not limited to, humiliation, anxiety, pain and suffering, and ultimately, loss of ability to lead a normal life. Defendants' conduct is so egregious, outrageous, and intentional that Plaintiff seeks punitive damages.

2. This action is brought pursuant to federal statute at 42 U.S.C. § 1981, 1983, 1985, and 1988, for deprivation of rights secured by the federal Constitution at the Fourth, Eighth, and Fourteenth Amendments. Jurisdiction is founded upon 28 U.S.C. § 1331, 1343(1), (3) and (4).

3. Plaintiff Nicholas Cory Plug (hereinafter "Plug" or "Plaintiff"), was a resident of the City of Paw Paw, Van Buren County, State of Michigan.

4. The Plaintiff was a resident and citizen of Van Buren County, State of Michigan, at all times relevant to this Complaint.

5. The amount in controversy exceeds $75,000.

6. All events, transactions, or occurrences pertinent hereto, transpired within Van Buren County.

7. Defendant Van Buren County (hereinafter referred to as "County") is a municipal corporation organized and existing by virtue of the constitution and laws of the State of Michigan.

8. Defendant Sheriff Daniel Abbot, who is being sued in his individual and official capacity, is a resident of Van Buren County, Michigan, and at all material times, was the duly elected Sheriff in Van Buren County and head of the Van Buren County Sheriff's Office and was charged with the duty to develop jail plans and policies affecting Plaintiff at the time of Plaintiff's injury. As Sheriff, his responsibilities included the care, custody, and control of all inmates, as well as the supervision of all staff at the Van Buren County Jail.

9. Defendant Deputy Dillon Kelly is a resident of Van Buren County and at all material times was employed by the Van Buren County Sheriff's Department as a booking officer, acting under color of state law, and within the scope of his capacity as an agent, servant, and employee of Defendant County.

10. Defendant Nurse Roslynn Hickmott is a resident of Van Buren County and at all material times was employed by the Van Buren County Sheriff's Department as jail nurse, acting under color of state law, and within the

3

scope of her capacity as an agent, servant, and employee of Defendant County.

## GENERAL ALLEGATIONS

11.  Defendants were the exclusive custodians of Plaintiff following his arrest on October 5, 2020, and were charged with the responsibility of monitoring him to assure his health would not be placed in jeopardy and that if he needed medical aid, he would receive it.

12.  The responsibilities of each defendant were required to be carried out in a manner consistent with the legal mandates that govern the operation of County jails, including County policies, procedures, directives, and protocols, in addition to all relevant local, state, and federal statutes and regulations, including the Michigan Department of Corrections County Jail Services Unit policies.

13.  The Defendants knew that Plaintiff was suffering from a serious medical need that posed an excessive risk to his health, and they knew that non-intervention would create an unjustifiably high risk of harm to Plaintiff's health and ignored the risk, resulting in permanent injury to Plaintiff.

14.  By the acts and omissions of Defendants, all of them and each of them, Plaintiff was left, unmonitored, to suffer methamphetamine

4

withdrawals and a severe stroke under preventable circumstances set forth in greater detail herein.

15. Each Defendant participated in and/or had knowledge of Plaintiff's serious medical needs and failed to properly house him under observation in a detox cell and denied him medical care for two days to Plaintiff after he suffered a stroke, and they are hereby sued in their individual capacities.

16. Defendants, all of them jointly and severally, are directly liable to Plaintiff for promulgation of and/or acquiescence to policies, practices, customs, and/or procedures which caused and/or contributed to the constitutional deprivation suffered by the Plaintiff, particularly as there was a special custodial relationship between Plaintiff and the County.

17. The acts and/or omissions of the individual Defendants, jointly and severally, constitute gross negligence, deliberate indifference, willful and wanton conduct, callous recklessness, wanton negligence, and deliberate and intentional disregard of the proper execution of their operational duties as County employees. As such, these Defendants, jointly and severally, are directly liable for the tragic results of their improper, non-discretionary activities.

18. Defendant County is also liable for the tortious conduct of its officers, employees, and agents, wherein said officers, employees, and agents were acting during the course of their employment and within the scope of their

authority while engaged in activities which were carried out in a grossly negligent nature.

19. Defendant County is also directly liable for its failure to properly train, retain, investigate, monitor, discipline, and/or supervise the individual Defendants in the proper execution of their duties and for failure to promulgate and enforce proper procedures, guidelines, practices, and policies to minimize as far as practical all foreseeable risks of harm.

20. The individual Defendants owed a duty to Plaintiff as a detainee of the Van Buren County Jail to provide him with appropriate and reasonable medical care consistent with the appropriate community standard, including but not limited to:

   a. Proper monitoring of Plaintiff's health and physical condition;

   b. Ensuring proper protocols exist for management of individuals with the medical needs of Plaintiff;

   c. Ensuring procedures were followed and that Plaintiff was in the correct places within the subject facility at all times;

   d. Proper, appropriate and necessary diagnosis, treatment and care of his objectively manifested physical ailments;

   e. Regularly checking on Plaintiff for signs and symptoms of drug withdrawal and medical illness;

   f. Detecting signs and symptoms of drug withdrawal and medical illness, and;

   g. Attending to Plaintiff's obvious and serious medical needs by immediately referring him to the appropriate medical professional.

21. Despite the individual Defendants' multiple contacts with Plaintiff and his objectively manifested symptoms of shortness of breath, diarrhea, uncontrollable coughing, urinary incontinence, loss of consciousness, failure of appetite, and inability to speak coherently, the individual Defendants' refusal to take reasonable steps to provide him medical attention and were grossly negligent in the following particulars:

   a. Failing to monitor Plaintiff after he had advised of recent drug use;

   b. Failing to ensure that Plaintiff was in the correct place in the facility at all times, especially upon entry to the facility;

   c. Failing to provide Plaintiff with adequate medical care and attention even though he consistently showed signs of his distress;

   d. Failing to communicate the severity of Plaintiff's condition with a person with competent training and/or ability to diagnose Plaintiff's condition;

   e. Failing to timely transport Plaintiff to a medical facility or doctor's office for evaluation and treatment;

   f. Failing to follow the procedures implemented by the jail and/or failing to implement the proper procedures to take care of inmates such as the Plaintiff.

22. Based on the above facts pled in avoidance of governmental immunity, individual Defendants' conduct is exempt from governmental immunity pursuant to M.C.L. 691.1407, because the individual Defendants' conduct in failing to place Plaintiff into an observable detoxification cell and withholding medical care for many days, was grossly negligent in that such

7

conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury to Plaintiff resulted.

23. As a direct and proximate result of the individual Defendants' gross negligence, Plaintiff sustained the damages as set forth herein.

## FACTUAL ALLEGATIONS

24. Plaintiff was booked into the Van Buren County Jail in Paw Paw Michigan on October 5, 2020, secondary to methamphetamine use.

25. Plaintiff was evaluated on booking by nurse Roselynn Hickmott, where she noted that he "appears to be under the influence of alcohol or drugs or has visible signs of withdrawal, extreme perspiration, pinpoint pupils, shakes, nausea, cramping, vomitting [sic]" and that he had ingested meth the evening before.

26. Booking Officer Dillon Kelly noted his observations that Plaintiff "appears to be under the influence of alcohol or drugs or has visible signs of withdrawal, extreme perspiration, pinpoint pupils, shakes, nausea, cramping, vomitting [sic]" and that he had ingested meth the evening before.

27. Plaintiff's Intake Admission Form asked whether he had presently existing medical conditions which was indicated as "yes, high on meth."

28. Over the next 11 days of his incarceration, jail personnel, including the named Defendant officer and Defendant nurse, noticed that Plaintiff

8

exhibited odd behavior such as being lethargic, confused, urinating on himself, difficulty feeding himself, and difficulty speaking, and trying to say words that were unintelligible.

29. Plaintiff's recorded last known well time was October 14, 2020.

30. On October 16, 2020, Defendants finally took Plaintiff to the ER at Bronson Lakeview Hospital where Plaintiff presented as aphasic, unable to state his name or birthday.

31. Plaintiff was taken for a CT scan and showed a large acute infarction in the left frontal lobe in the MCA territory, along with some patchy hypoattenuation in the frontal lobes representing additional sites of other infarction.

32. Plaintiff's hepatic function panel came back as abnormal.

33. Plaintiff was ultimately diagnosed with possible pneumonia, an acute ischemic left MCA stroke, methamphetamine abuse, aphasia, systolic dysfunction and diastolic dysfunction and deemed Red Critical.

34. Plaintiff was transferred to Bronson Methodist Hospital for further stroke work-up.

35. Todd C Bennet, DP, indicated that 'patient seems to have presented later in process so likely already 48 hours past stroke event."

36. Plaintiff remained at Bronson for two (2) weeks, then continued rehabilitation a Mary Free Bed for another two (2) weeks.

37. Prior to his booking, Plaintiff was independent with activities of daily living and was not using equipment for mobility, but he required in-patient rehabilitation and 24 hour assistance after this series of events.

38. As a direct and proximate result of the individual Defendants' acts and omissions, Plaintiff sustained the damages as set forth herein.

### COUNT I - FEDERAL CONSTITUTIONAL VIOLATIONS EIGHTH AMENDMENT

39. Plaintiff repeats the preceding paragraphs as if fully set forth.

40. All the Defendants, at all times herein, owed Plaintiff the duty of protecting his federal constitutional rights, including the following guaranteed rights:

   a. The right to adequate medical attention while in custody of Defendants;

   b. The right to be free from bodily harm and injury caused unjustifiably while in custody of Defendants; and

   c. The right not to be subjected to cruel and unusual punishment.

41. These Defendants, acting under color of state law, violated these rights by deliberately denying Plaintiff medical attention to his obvious serious medical needs in a reasonably foreseeable time after having actual knowledge about the problem.

42. As a direct result of the Defendants' conduct, Plaintiff was caused to sustain severe, intractable, permanent, and constant pain from

methamphetamine withdrawals and ischemic stroke for days before being seen by medical professionals.

43. These actions on the part of all Defendants violated the United States Constitution, particularly the Eighth and Fourteenth Amendments, which is actionable pursuant to 42 U.S.C. §1983.

44. As a direct and proximate result of the individual Defendants' acts and omissions, Plaintiff sustained the damages as set forth herein.

45. Plaintiff would not have sustained the same level of injury and necessitated the same level of treatment, had timely medical care been initiated by the Defendants, who were responsible for his well-being.

### COUNT II - DEFENDANT COUNTY AND COUNTY SHERIFF VIOLATION OF FEDERAL RIGHTS – *MONELL* LIABILITY

46. Plaintiff repeats the preceding paragraphs as if fully set forth.

47. The Defendants owed duties to Plaintiff which included the duty to identify signs of withdrawal, provide proper monitoring in a detoxification unit, provide reasonable and adequate medical attention in a reasonable time after Plaintiff's original complaints about medical needs, observable symptoms of withdrawal, and observable and obvious symptoms of having suffered a stroke.

48. In addition, these duties include the duty to implement and monitor an adequate hiring and training program for all officers and deputies

working at the County Jail so that they would be capable of making decisions about the need for medical care which arose when there was not a health care professional present.

49.  These Defendants failed in these above duties to adequately train detention facility/jail personnel, and historically have had a policy, custom, and practice of failing to implement an adequate training program to properly train detention facility/jail personnel.

50.  These Defendants adopted, ratified, and/or implemented policies, practices and procedures which deny incarcerated individuals (including Plaintiff) who manifest signs of drug withdrawal, proper housing and observation in a detoxification cell.

51.  These Defendants adopted, ratified, and/or implemented policies, practices and procedures which denied incarcerated individuals, including Plaintiff, with manifest signs of serious medical needs, adequate and timely medical care, demonstrating a deliberate indifference to Plaintiff's serious medical needs, thereby violating Plaintiff's constitutional rights.

52.  The acts and omissions of the Defendants taken pursuant to the de facto policies, practices and procedures, adopted, ratified, and/or implemented by Defendants, impermissibly condoned and allowed for the denial of proper medical care and treatment to residents of the Van Buren County Jail, such as Plaintiff, which amounts to deliberate indifference in

the denial of such inmates' civil rights as are guaranteed by the Constitution of the United States.

53.  The aforesaid acts and omissions of Defendants were all committed under color of law and under color of their official authority as a County, County Department, County officers/employees, and/or peace officers.

54.  The acts and omissions of the Defendants constituted deliberate indifference to the serious and apparent medical needs of Plaintiff in violation of the Eighth and Fourteenth Amendments to the Constitution of the United States and, hence, are actionable under 42 U.S.C. §1983.

55.  Despite Defendants' knowledge of the said illegal policies, practices, and procedures, Defendant's supervisory policy-making officers and officials or employees of Van Buren County, as a matter of policy, practice and procedure, said Defendants:

>   a.  failed to take appropriate and necessary steps to discover and determine that said policies, practices and procedures had and would continue to result in injuries to Plaintiff and those similarly situated; specifically, Defendants failed to have a policy of assessing inmates at booking for serious medical needs including drug withdrawal and failed to have a policy to maintain observation of inmates who exhibit obvious signs and symptoms of illnesses common to an ordinary person or, if having such policy, failed to enforce the same.
>
>   b.  failed to discipline and properly supervise the individual officers, deputies, and employees who engaged in the said acts pursuant to these policies, practices and procedures which resulted in Plaintiff's injury;

13

    c. failed to effectively train and supervise the said individual Defendants with regard to the proper constitutional and statutory limits of their authority;

    d. ratified said policies, practices and procedures which cause violations of the constitutional rights of inmates and/or played a significant causal role in denial of the constitutional rights of Plaintiff and his ultimate permanent harm.

    e. failed to formulate or adopt appropriate policies, practices and procedures to instruct and train employees and jail personnel in the implementation of policies, practices and procedures to protect inmates similarly situated to Plaintiff;

56. As a direct and proximate result of the individual Defendants' acts and omissions, Plaintiff sustained the damages as set forth herein.

## DAMAGES

57. Plaintiff repeats the preceding paragraphs as if fully set forth.

58. As a direct and proximate result of the individual Defendants' acts and omissions, Plaintiff sustained the following damages:

    a. Extreme physical pain and severe suffering;

    b. Extreme embarrassment and severe humiliation,

    c. Physical, psychological and emotional damages;

    d. Loss of bodily function;

    e. Loss of speech and mobility;

    f. Loss of ability to enjoy life;

    g. Ischemic stroke and attendant losses; and

    h. any other imaginable loss, damage, injury or expense;

WHEREFORE, for all the above reasons, Plaintiff demands judgment against Defendants, jointly and severally, in whatever amount he is found to be entitled, as determined by the trier of fact, together with punitive and/or exemplary damages, costs, interests, attorney fees, including but not limited to such attorney fees as are allowable under 42 U.S.C. §1988.

Respectfully submitted,

THE MICHIGAN LAW FIRM, PC

Dated: October 5, 2023

/s/ Racine M. Miller
RACINE M. MILLER (P72612)
Attorneys for Plaintiff
135 N. Old Woodward Ave., Suite 270
Birmingham, MI 48009
Phone: 844.464.3476
Fax: 248.237.3690
racine@themichiganlawfirm.com

## DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff, by and through the undersigned attorneys, and hereby demands a trial by jury of each and every matter at issue in the above-entitled cause.

Respectfully submitted,

THE MICHIGAN LAW FIRM, PC

Dated: October 5, 2023

/s/ Racine M. Miller
RACINE M. MILLER (P72612)
Attorneys for Plaintiff
s