UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICHOLAS CORY PLUG,

        Plaintiff,

v.

        CASE NO. 1:23-cv-1055

        HON. ROBERT J. JONKER

COUNTY OF VAN BUREN, et al.,

        Defendants.
_____/

**ORDER REGARDING**
**REPORT AND RECOMMENDATION**

The Court has reviewed Magistrate Judge Vermaat's Report and Recommendation in this matter (ECF No. 75), Defendant's Objections (ECF No. 76), Plaintiff's Objections (ECF No. 78), and Defendant's Reply to Plaintiff's Objections (ECF No. 79). Under the Federal Rules of Civil Procedure, when a party has objected to portions of a Report and Recommendation, "[t]he district judge . . . has a duty to reject the magistrate judge's recommendation unless, on *de novo* reconsideration, he or she finds it justified." 14 *Wright & Miller's Federal Practice & Procedure* § 3070.2 (3d ed. 2014). Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3). De novo review in these circumstances requires at least a review of the evidence before the Magistrate Judge. *Hill v. Duriron Co., Inc.*, 656 F.2d 1208, 1215 (6th Cir. 1981). The Court has reviewed de novo the claims and evidence presented to the Magistrate Judge; the Report and Recommendation itself; Plaintiff's Objections; and Defendant's Objections. For

the reasons that follow, the Court adopts, in part, the Magistrate Judge's Report and Recommendation.

## THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This 42 U.S.C. § 1983 action is brought by Plaintiff, alleging violation of his constitutional rights to receive medical care while in official custody. Plaintiff names as defendants Van Buren County, Sheriff Daniel Abott, Deputy Dillon Kelly, and Nurse Roslynn Hickmott. On May 30, 2025, Defendants filed a motion for summary judgment. (ECF No. 64.) The Magistrate Judge recommends granting the motion with respect to Defendants Kelly, Abbot, and Van Buren County, (ECF No. 75, PageID.1028), but he recommends denying the motion with respect to Nurse Hickmott because "a genuine issue of material fact exists regarding whether Nurse Hickmott acted with reckless disregard to Plug's serious medical needs." (*Id.*). Each side objected to the portions of the Report and Recommendation adverse to that side's position.

## DISCUSSION

**I.    Defendants Kelly, Abott, and Van Buren County**

The Court has carefully and thoroughly considered the evidentiary record, the parties' arguments, and the governing law. The Court accepts and adopts the Magistrate Judge's recommendation to grant summary judgment to Defendants Kelly, Abott, and Van Buren County. In the Report and Recommendation, the Magistrate Judge recommends granting summary judgment to Defendant Kelly because he is entitled to qualified immunity. (*Id.* at PageID.1021). Additionally, the Magistrate Judge recommends granting summary judgement to Sheriff Abott, who is being sued in his official capacity for a failure to train, because Plaintiff failed to show a pattern of constitutional violations committed by employees working under Sheriff Abott's supervision. (*Id.* at PageId.1026). And finally, the Magistrate Judge recommends granting

2

summary judgment to Van Buren County because Plaintiff has failed to identify a policy or custom of the county that caused Plaintiff's constitutional rights to be violated. (*Id.* at PageID.1025).

In his objections to these portions of the Report and Recommendation, Plaintiff primarily reiterates and expands upon arguments presented in the original complaint. Plaintiff's objections fail to deal in a meaningful way with the Magistrate Judge's analysis. The Magistrate Judge carefully and thoroughly considered the record, the parties' arguments, and the governing law. The Magistrate Judge properly analyzed Plaintiff's claims. Nothing in Plaintiff's Objections changes the fundamental analysis. Therefore, the Court concludes that Defendants Kelly, Abott, and Van Buren County are entitled to summary judgment.

## II.    Defendant Hickmott

After de novo review, the Court respectfully rejects the Magistrate's recommendation to deny Defendant's Motion for Summary Judgment with respect to Nurse Hickmott. On the summary judgment record, the Court does not believe a reasonable factfinder could conclude that Defendant Hickmott acted with the subjective mental state required for a Fourteenth Amendment deliberate indifference claim.[1] Moreover, the Court believes that the evidentiary record does not suggest that Nurse Hickmott violated a clearly established constitutional right. Accordingly, the Court grants Defendants' Motion for Summary Judgment with respect to Defendant Hickmott.

---

[1] In their Motion for Summary Judgment, the defendants argue that the plaintiff failed to adequately plead a violation of the Fourteenth Amendment because the heading to Count I only referenced the Eighth Amendment, not the Fourteenth. (ECF No. 65, PageID.425). The Magistrate Judge correctly rejected this claim. (ECF No. 75, PageID.1004). The language of Plaintiff's Complaint states that the wrongs alleged are violations of the Eighth and Fourteenth Amendments. (ECF No. 1, PageID.11). It does not matter that the heading itself only referenced the Eighth Amendment.

3

### A.     *Failure to Provide Medical Care*

The Eighth Amendment prohibits prison officials from inflicting cruel and unusual punishment upon a prisoner by acting with "deliberate indifference" towards that prisoner's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  A deliberate indifference claim has both an objective and a subjective component.  *Brawner v. Scott Cnty., Tennessee*, 14 F.4th 585, 591 (6th Cir. 2021).  The objective component asks whether the medical need was "sufficiently serious," and the subjective prong asks whether a prison official knew of and deliberately disregarded a substantial risk to the prisoner's safety.  *Id.*

Historically, courts have analyzed cases involving pre-trial detainees under the same rubric that is used to analyze cases involving convicted prisoners.  *Id.*  In recent years, however, courts have recognized that the differences between the Eighth Amendment's Excessive Punishment Clause and the Fourteenth Amendment's Due Process Clause require claims brought by convicted prisoners to be analyzed slightly differently than claims brought by pre-trial detainees who have not been convicted of any crime.  *Id.* at 596; *see also Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 317 (6th Cir. 2023).  Specifically, a pre-trial detainee bringing a claim for deliberate indifference to a serious medical condition does not need to show that the prison official knew of the substantial risk to the prisoner's safety; rather, a pre-trial detainee bringing such a claim can prevail by showing that the prison official acted "recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious it should be known."  *Helphenstine*, 60 F.4th at 317 (quoting *Brawner*, 14 F.4th at 596).

Here, Plaintiff argues that a reasonable jury could conclude that Nurse Hickmott acted recklessly.  (ECF No. 78, PageID.1049).  According to the plaintiff, even Nurse Hickmott's own

4

Case 1:23-cv-01055-RJJ-MV    ECF No. 80, PageID.1059    Filed 11/26/25    Page 5 of 9

notes show that she knew or should have known of an unjustifiably high risk that Plaintiff was suffering from a serious medical issue. (*Id.*) The Court, however, is not convinced.

A review of the evidence shows that Nurse Hickmott knew from the plaintiff's intake form that Plaintiff had ingested methamphetamine and appeared to be suffering from symptoms of withdrawal. (ECF No. 65-1, PageId.446, 449). The evidence also shows that Nurse Hickmott regularly monitored Plaintiff's health. (ECF No. 65-3, PageID.469–471). Each time she evaluated the plaintiff, Nurse Hickmott took careful notes. (*Id.*) Her notes show that the plaintiff was originally concerned that he had contracted covid prior to his arrest. (*Id.* at PageID.469). He complained of a cough and shortness of breath when lying down, and he indicated that he had been sick for two to three days before coming to jail. (*Id.*). Nurse Hickmott noted that the plaintiff did not have any nasal discharge, was not complaining of body aches, and had been eating well, though he was not drinking much. (*Id.*). Therefore, Nurse Hickmott ordered a covid test for Plaintiff, tested his oxygen and pulse, and advised the plaintiff to increase his fluids. (*Id.*)

After Plaintiff's covid test came back negative, Nurse Hickmott informed the plaintiff of the results and then continued to monitor the plaintiff's health for the next two days. (*Id.* at PageID.470). The notes she took during these evaluations show that Nurse Hickmott was thorough in her evaluations. She regularly monitored the plaintiffs' vitals, attempted to speak with him during each interaction, and inquired about whether he was eating or drinking. (*Id.*). Some of these notes reflect symptoms that are worrying, such as mumbling, refusing to speak when addressed, or sleeping throughout much of the day. (*Id.*) Most of the notes, however, show that Plaintiff was doing quite well—he was not experiencing pain, he was eating most of his meals, and he was following commands. (*Id.*) And his blood pressure, though high, was not outside of

5

the range one might expect for a man of heavy build who is withdrawing from methamphetamine consumption.[2] (*Id.*).

The Report and Recommendation also notes that Plaintiff had been urinating on himself. (ECF No. 75, PageID.1002). This assertion is drawn from notes in Plaintiff's medical records that were made by hospital staff. (*Id.* at PageID.1017–18). The hospital staff based their notes on statements that were allegedly made to them by the prison officials who accompanied Plaintiff to the hospital. (*Id.*). Such notes, however, are inadmissible hearsay. (*See* Fed. R. Evid. 805 (holding that hearsay within hearsay is only excluded from the rule against hearsay "if each part of the combined statements conforms with an exception to the rule"); *Field v. Trigg Co. Hosp., Inc.*, 386 F.3d 729, 735–36 (6th Cir. 2004) (determining that the hearsay exception in Fed. R. Evid. 803(4) applies "only to statements made by the one actually seeking or receiving medical treatment"). Even if these notes were admissible, though, they would still be insufficient to show that Nurse Hickmott was aware Plaintiff had urinated on himself.

Moreover, when considered in context, it is apparent that the hospital's notes about the patient urinating on himself referred only to events that had begun to occur within the past day or so. (*See* ECF No. 75, PageID.1017). Such notes are consistent with the jail staff's assertions that they noticed a significant change in Plaintiff's behavior on the morning they sent him to the hospital. (*Id.*). Thus, considered in context, the notes underscore that until shortly before bringing the plaintiff to this hospital, his symptoms were consistent with what one would expect from a person suffering from methamphetamine withdrawal.

Finally, unlike the plaintiffs in many failure-to-provide-adequate-medical-care cases, *see, e.g., Helphenstine*, 60 F.4th at 312, the plaintiff in this case had a nurse monitoring him regularly

---

[2] Specifically, Nurse Hickmott's notes show that Plaintiff's blood pressure was 147/100 on the first day she tested him and 140/98 on the second day she tested him. (ECF No. 65-3, PageID.470).

after he was first booked. Then, shortly after jail staff first saw a significant change in Plaintiff's behavior, they brought him to a hospital. It is genuinely regrettable that the trip to the hospital happened after a stroke event had struck the plaintiff, but even the hospital notes indicate that there was no reason to expect stroke to strike an otherwise healthy 35-year-old man. (*See* ECF No. 69-4, PageID.650) ("Certainly does not make sense for someone his age to have had a stroke.").

Given such evidence, a reasonable jury could not conclude that Nurse Hickmott acted "recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious it should be known." *Helphenstine*, 60 F.4th at 317 (quoting *Brawner*, 14 F.4th at 596). The evidence shows that Plaintiff was moving around his cell, denying that he was in pain, and eating most of his meals. And even his more concerning symptoms, such as periodic incoherence or lethargy, are consistent with the symptoms one would expect of a person recovering from methamphetamine withdrawal. Finally, none of the evidence suggests that Nurse Hickmott was ignoring Plaintiff's condition. On the contrary, she was frequently evaluating his condition and making medical determinations in response to her findings. Even if those determinations were wrong in hindsight, such mistakes fail to rise to the level of a constitutional violation. *See Griffith v. Franklin Cnty., Kentucky*, 975 F.3d 554, 573 (6th Cir. 2020).

### B. Qualified Immunity

Nurse Hickmott is also entitled to summary judgment in her favor because of qualified immunity. Under the qualified immunity doctrine, government officials are shielded from liability for civil damages if their actions did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity provides officials with "breathing room to make reasonable but mistaken judgments," and it

7

"protects all but the plainly incompetent or those who knowingly violate the law." *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) (quoting *Stanton v. Sims*, 571 U.S. 3, 6 (2013)).

Here, Plaintiff relies on two cases that he says show that "custody officers violate the Fourteenth Amendment when they respond unreasonably to obvious, worsening medical needs, particularly in withdrawal or neurological emergency contexts." (ECF No. 78, PageID.1044). Both cases that Plaintiff cites, however, are distinguishable from the case at hand. In the first case, officers failed to seek medical care after a detainee had vomited multiple times over a three-day period, defecated on himself and inside his cell, refused to eat or drink, drooled on himself, and spent over 24 hours in bed. *See Helphenstine*, 60 F.4th at 312. Moreover, in *Helphestine*, a medical professional never personally observed the plaintiff. *Id.* And in the second case, medical staff placed a detainee with sickle cell disease in a restraint chair after he fell to the ground, screamed uncontrollably, reported that he could not feel his legs, and rated his pain at ten-of-ten. *Howell v. NaphCare, Inc.*, 67 F.4th 302, 308 (6th Cir. 2023).

Such fact patterns bear no comparison to what was happening in this case. Here, a medical professional provided regular monitoring of Plaintiff, noting his stable and generally improving condition, up until the day that Plaintiff's symptoms took a turn for the worse. And even then, jail staff responded by bringing Plaintiff to the hospital within 24 hours of when his condition worsened.

The evidence in the case at hand is insufficient to show that Nurse Hickmott should have known that Plaintiff was in need of urgent medical care. Unlike the plaintiffs in *Howell* and *Helphenstine*, the Plaintiff in the case at hand was responsive, alert, and reporting little pain or discomfort. Such symptoms are far from indicative of a need that is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Helphenstine*, 60 F.4th at

318 (quoting *Griffith*, 975 F.3d at 567).  The record does not show that Defendant Hickmott was on notice before the day Plaintiff went to the hospital of a risk of stroke or other serious medical problem requiring hospitalization.  Therefore, there was no clearly established constitutional right under these circumstances.  And as such, Defendant is entitled to summary judgment on qualified immunity grounds as well.

        **ACCORDINGLY, IT IS ORDERED**:

The Report and Recommendation of the Magistrate Judge (ECF No. 75) is **ADOPTED IN PART** and **REJECTED IN PART**.  Defendants' Motion for Summary Judgment (ECF No. 64) is **GRANTED**.

It is further ordered that this case is **DISMISSED**.  A separate Judgment shall enter.


Dated:  November 26, 2025                         /s/ Robert J. Jonker
                                                                          ROBERT J. JONKER
                                                                          UNITED STATES DISTRICT JUDGE